IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**BENJAMIN EUGENE WALKER,**

    **Plaintiff,**

v.                                                          Civil Action No. 5:19-cv-00031

**ANDREW SAUL,**[1]
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff Benjamin Eugene Walker ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. By standing order entered on January 4, 2016, and filed in this case on January 9, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Memorandum in Support of Judgment on the Pleadings (ECF No. 14), the Commissioner's Brief in Support of Defendant's

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

1

Decision (ECF No. 15), and Claimant's Reply to Brief in Support of Defendant's Decision (ECF No. 16).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's decision (ECF No. 14), **DENY** the Commissioner's request to affirm his decision (ECF No. 15), and **REMAND** this matter for further proceedings.

## I.  BACKGROUND

*A. Information about Claimant and Procedural History of Claim*

Claimant was 38 years old at the time of his alleged disability onset date and 42 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 188.)[2] He has a seventh-grade education. (*Id.* at 365.) Most recently, he worked for an automobile and tire service, and he has also worked in construction. (*Id.*) Claimant alleges that he became disabled on December 31, 2013, due to anxiety, depression, arthritis in his arms and back, and post-traumatic stress disorder. (*Id.* at 364.)

Claimant protectively filed his applications for benefits on July 21, 2014. (*Id.* at 342–43; *see id.* at 344–51.) His claims were initially denied on April 20, 2015, and again upon reconsideration on July 8, 2015. (*Id.* at 214–15, 259–72.) Thereafter, on September 2, 2015, Claimant filed a written request for hearing. (*Id.* at 273–74.) An administrative hearing was held before an ALJ on July 26, 2017, in Mount Hope, West Virginia, with the ALJ presiding from Charleston, West Virginia. (*Id.* at 133–87.) On August 23, 2017, the ALJ entered an unfavorable decision. (*Id.* at 110–32.) Claimant then sought review of the ALJ's decision by the Appeals Council on October 27, 2017. (*Id.* at 337–41.) The

---

2 All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 9.

Appeals Council denied Claimant's request for review on November 20, 2018, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–7.)

Claimant timely brought the present action on January 9, 2017, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 8) and a transcript of the administrative proceedings (ECF No. 9). Claimant subsequently filed his Memorandum in Support of Judgment on the Pleadings (ECF No. 14), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 15). Claimant then filed his Reply to Brief in Support of Defendant's Decision (ECF No. 16). As such, this matter is fully briefed and ready for resolution.

B. *Relevant Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1. *Vocational Expert Hearing Testimony*

At Claimant's administrative hearing, the ALJ solicited testimony from a vocational expert ("VE") about Claimant's ability to perform his past work or other work. (*Id.* at 176–81.) Claimant's attorney also examined the VE. (*Id.* at 182–86.) The ALJ first asked the VE to classify Claimant's past work according to the *Dictionary of Occupational Titles*. (*Id.* at 176.) The VE classified Claimant's work in construction as "medium work, SVP seven, often performed as up to heavy work." (*Id.* at 176, 178.) She classified Claimant's work as an "auto-tire service laborer" as "medium work, SVP five." (*Id.* at 176.)

The ALJ then asked the VE whether a hypothetical individual limited to "medium work" who "could occasionally deal with ladders, ropes, scaffolding, crouching, and

3

crawling" and could frequently perform "other posturals" but was "limited to 45 degrees" in reaching in front and laterally with the left arm, among other limitations, could perform Claimant's past work. (*Id.* at 179–80.) The VE responded that the hypothetical individual would not be able to perform Claimant's past work. (*Id.* at 180.)

Next, the ALJ asked the VE if any light-work jobs would be available for the hypothetical individual. (*Id.*) The VE responded that the hypothetical individual could perform work as a routing clerk, mail clerk (non-postal), or hand bander. (*Id.* at 181.) The ALJ also asked the VE if being "off-task 25 percent of the workday outside of normal breaks and lunch" would preclude work, and the VE replied that it would. (*Id.*) But when asked if the hypothetical individual could miss work one day per month with an excused absence, the VE answered that work would be available. (*Id.*)

The ALJ then permitted Claimant's attorney to question the VE. (*Id.*) Claimant's attorney first asked the VE if the positions of routing or mail clerk required contact with co-workers. (*Id.* at 182.) The VE responded that the jobs were "isolated." (*Id.*) Next, Claimant's attorney asked the VE if the limitations on the hypothetical individual's ability to reach with his left arm would affect his ability to work in the representative jobs the VE identified. (*Id.* at 183.) Claimant's attorney surmised that an individual able to lift his left arm to 45 degrees could "reach at the table level." (*Id.*) She asserted that as a result, "there would be some limitations in his handling and fingering." (*Id.* at 183–84.) Claimant's attorney also asked the VE if the 45-degree limitation would "limit [the hypothetical individual's] productivity or his capacity to sustain the requirements of a job." (*Id.* at 184.)

The ALJ suggested that Claimant was not limited to lifting his left arm only to table height. (*Id.* at 183.) Earlier in the hearing, the ALJ had asked Claimant to demonstrate

4

his reaching abilities with his left arm, and the ALJ noted that Claimant "can't get it more than about 45 degrees." (*Id.* at 140–41.)

The VE clarified that she understood the 45-degree limitation to mean that the hypothetical individual's "left arm really just couldn't be worked using it to overhead and above chest level and up." (*Id.* at 184–85.) Claimant's attorney, reasoning that "90 degrees is going to be straight out in front of you," asked whether the hypothetical individual would be able to perform the representative jobs the VE identified if he were unable to "reach directly out in front" with his left hand. (*Id.* at 185–86.) The VE answered that he would not be able to perform them. (*Id.*)

C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.\* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th

Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ

7

must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If he does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether he can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id*. (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find him "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot perform other work, the ALJ will find him "disabled." *Id*.

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 116.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id*.) He found that Claimant's degenerative disc disease, degenerative arthritis, degenerative joint disease of the left acromioclavicular (AC) joint, left rotator cuff tear, and carpal tunnel syndrome constituted "severe" impairments. (*Id*.) However, he found that those impairments, or a

8

combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 116–19.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform medium work . . . except he can occasionally climb ladders, ropes, or scaffolds, crouch, and crawl, but can frequently climb ramps and stairs, balance, stoop, and kneel." (*Id.* at 119.) In addition, the ALJ found that Claimant's "left arm is limited to 45 degrees for reaching in front and laterally, but not higher than 45 degrees." (*Id.*) The ALJ further found that Claimant "can tolerate frequent exposure to heights, machinery, and hazards, hot and cold temperature extremes, and vibration." (*Id.*) He determined that Claimant "is afflicted with pain noticeable to himself at all times, but he could maintain attention and concentration at two-hour increments with normal morning, lunch, and afternoon breaks." (*Id.*) The ALJ also limited Claimant "to simple, routine, and repetitive tasks with one to two-step instructions" and "low stress work defined as work with no strict product quotas" with "no teamwork or tandem work" or "direct public contact, but [he] is capable of occasional contact with co-workers or supervisors." (*Id.*) Finally, the ALJ determined that Claimant "would likely be absent one day a month with an excused absence." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 124–25.) He noted that Claimant is "a younger individual" with "a limited education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id.* at 125.) Because the ALJ determined that Claimant was unable to perform the full range of medium work, he enlisted a VE to aid in his finding that Claimant is capable of working as a routing clerk, mail clerk (non-postal), or hand bander. (*Id.* at 125–26.) As a result, the ALJ concluded

9

that Claimant was not "under a disability . . . from December 31, 2013, through the date of this decision." (*Id.* at 126.)

## II.   LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.   ANALYSIS

Claimant argues that the ALJ improperly failed to determine whether the VE's testimony was consistent with the *Dictionary of Occupational Titles* and thus erred in concluding at step five of the sequential evaluation process that Claimant could perform the representative jobs of routing clerk, mail clerk (non-postal), and hand bander. (ECF

10

No. 14 at 7–10.) Claimant asks this Court to reverse the Commissioner's decision and award him benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 10.) The Commissioner agrees that the ALJ failed to ask the VE if her testimony was consistent with the *Dictionary of Occupational Titles*, but he responds that the error was harmless because the VE testified that Claimant could perform the representative jobs she identified with the RFC the ALJ described. (ECF No. 15 at 5–8.) Claimant replies that the harmless error doctrine does not apply because the ALJ did not explain why he relied on the VE's testimony despite a conflict with the *Dictionary of Occupational Titles*. (ECF No. 16.)

"When, as in this case, an ALJ determines that a claimant's RFC prevents the claimant from performing [his] past work, the ALJ reaches step five of the review process," and "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant is capable of doing other work that exists in significant supply in the national economy." *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019). Generally, to meet this burden, "the Commissioner calls a VE to testify to whether a hypothetical person with the same limitations as the claimant would be able to perform any of the jobs listed in the [*Dictionary of Occupational Titles*]." *Id.* (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Before relying on the VE's testimony, the ALJ must ask her if her testimony conflicts with the *Dictionary of Occupational Titles* and solicit an explanation if she answers that it does. *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00-4p, 2000 WL 1898704, at *4). But even if the VE does not identify a conflict between her testimony and the *Dictionary of Occupational Titles*, the ALJ must nonetheless "independently . . .

identify conflicts between the [VE's] testimony and the *Dictionary*" by "compar[ing] the express language of the *Dictionary* and the [VE's] testimony." *Id.* at 209.

As previously stated, Claimant and the Commissioner agree that the ALJ improperly failed to ask the VE if her testimony about a hypothetical individual's ability to perform the representative jobs that she identified conflicted with the *Dictionary of Occupational Titles*. (ECF No. 14 at 8; ECF No. 15 at 6; *see* Tr. at 176–81.) However, the Commissioner argues that the ALJ's error was harmless because there is no "apparent conflict" between the VE's testimony and the *Dictionary*. (ECF No. 15 at 6.)

An "apparent conflict" exists when "a VE's testimony 'seems to, but does not necessarily' conflict with the 'express language' of the [*Dictionary of Occupational Titles*]." *Thomas*, 916 F.3d at 313 (quoting *Pearson*, 810 F.3d at 209). Such a conflict is present in this case. As in *Pearson*, the representative jobs identified by the VE all require frequent reaching, according to the *Dictionary of Occupational Titles*. U.S. Dep't of Labor, Dictionary of Occupational Titles 222.687-022, 1991 WL 672133; *id.* 209.687-026, 1991 WL 671813; *id.* 920.687-026, 1991 WL 687967; *see Pearson*, 810 F.3d at 210. And like in *Pearson*, there is a question in this case as to the nature of the reaching the jobs require. *See* 810 F.3d at 211. Therefore, the ALJ was required to resolve this conflict by "elicit[ing] an explanation from the [VE] as to whether these occupations do, in fact, require [a certain type of] reaching." *Id.*[3]

To that end, the VE testified that a hypothetical individual who was unable to lift his arm "to overhead and above chest level and up" could perform the representative jobs,

---

[3] The Commissioner argues that *Pearson* is distinguishable because the ALJ in this case "limited the degree of [Claimant's] reaching," rather than the frequency. (ECF No. 15 at 8.) But the principal issue in *Pearson* was "whether the jobs identified by the VE would ever require the claimant to reach *overhead* with his *nondominant* arm." *Thomas*, 916 F.3d at 314 (emphasis in original). That is essentially the issue in this case. *Pearson* is thus instructive here.

12

but an individual unable to "reach directly out in front" could not perform them. (Tr. at 184–85.) The ALJ found, based on Claimant's demonstration of his reaching abilities at the hearing, that Claimant "can't get [his left arm] more than about 45 degrees." (*Id.* at 140–41.) The hypothetical individual the ALJ described to the VE "could reach in front, laterally, but not any higher than 45 degrees." (*Id.* at 179.) However, as Claimant's counsel pointed out at the hearing, if Claimant could raise his left arm only 45 degrees in all directions, he would be unable to reach "straight out in front of him" at chest level. (*Id.* at 185.) This suggests that he would be unable to perform the representative jobs identified by the VE, according to the VE's testimony. (*See id.* at 184.)

Despite this conflict, the ALJ took no steps to resolve the discrepancy raised by Claimant's counsel. He made no further findings about the range of motion in Claimant's left arm during the hearing. And in concluding that Claimant's "left arm is limited to 45 degrees for reaching in front and laterally, but not higher than 45 degrees" (*id.* at 119), the ALJ did not explain whether he understood 45 degrees to mean chest level, as the VE interpreted it, "table level," as Claimant's counsel interpreted it, or something in between. In other words, the ALJ failed to "address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements." *Pearson*, 810 F.3d at 211. Therefore, "the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision." *Id.* at 209. Here, the ALJ based his conclusion at step five entirely on the VE's testimony about "valid jobs with [the 45-degree] limit." (Tr. at 126.) The undersigned **FINDS** that this was error in light of the VE's testimony.

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Claimant's request to reverse the Commissioner's

decision (ECF No. 14), **DENY** the Commissioner's request to affirm his decision (ECF No. 15), and **REMAND** this matter to the ALJ for further proceedings.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Volk.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: October 30, 2019

Dwane L. Tinsley
United States Magistrate Judge